UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | l |
| Plaintiff, | l |
| v. | l   No. 13 CR 774-4 |
| | l   Honorable John J. Tharp, Jr. |
| GABRIEL BUSH, et al., | l |
| Defendant | l |

**DEFENDANTS' JOINT MOTION TO DISMISS ON LIMITATIONS GROUNDS**

Gregory Chester, Arnold Council, Paris Poe, Gabriel Bush, Stanley Vaughn, William Ford, and Derrick Vaughn, defendant herein, by and through their respective attorneys, respectfully submit the following Motion to Dismiss Count One on Limitations grounds, and state as follows:

**RELEVANT BACKGROUND**

On or about September 4, 2014, a Superseding Indictment alleging violations of the RICO conspiracy statute along with certain substantive counts was filed; the conspiracy was stated to have begun in about 2004, and continued until about 2013. D.E. 169. Count One describes the alleged Enterprise as an 'ongoing' criminal organization which it terms the "HOBOS". Id. The various purposes of the HOBO enterprise was to "promote and enhance" the enterprise's "members and associates' activities" through the use of violent acts not limited to "murder, robbery, and the illegal trafficking of controlled substances." Id. at ¶¶ 4(a) and (b). Count one also alleges the use of fear to intimidate witnesses from assisting police and thereby preventing detection by law enforcement authorities. Id. at ¶¶ 4(c), (d) and (e).

On September 26, 2013, the initial Indictment was returned. D.E. 1. Though Count One shared most of the same allegations the earlier indictment stated that the conspiracy lasted until some time in 2009.

In a section of Count One subtitled 'Means and Methods of the Conspiracy', the grand jurors in the most general of terms set out that the member s employed criminal means to conduct the affairs of the enterprise mainly listing "robberies and the illegal trafficking of controlled substances." ¶ 8(c). In order to tie the allegations of mayhem together the Indictment states that the members "shared in the proceeds of the enterprise's illegal activities." Id.; see also, ¶ 3 (The "common purpose of achieving the objectives of the enterprise.") Thus as pointed out in much greater detail in a corresponding Motion to Dismiss Count One, filed contemporaneously and adopted herein, the racketeering conspiracy in each Indictment is not defined in terms separate and apart from the criminal activities of its alleged members and associates. Defendants Motion to Dismiss Count One. Pp. 2 – 9.

As with the initial indictment, the Superseding Indictment is drawn without regard to setting out the structure of the alleged enterprise or the nature of the all-important agreement which ties each defendant to the enterprise and its otherwise seemingly unrelated activities. Paragraph 8 sets out a few specific acts, as follows: in subparagraph 'o', several drug spots by location only without any temporal restriction; subparagraph 'r', six murders between the dates of January 19, 2006, and May 12, 2008; and, in the Superseding Indictment, a murder committed on April 14, 2013. In subparagraph 's', five attempted murders stated to have occurred between June 11,

2006, and February 27, 2007. In subparagraph 'u' three robberies between June 11, 2008 and March 25, 2009.  Only the robbery of March 25, 2009, and the murder of April 14, 2013, are alleged to be within the five year limitations period of the initial Indictment. See, e.g., *United States v. Schiro*, 679 F.3d 521, 528 (7th Cir. 2012), citing 18 U.S.C. § 3282.

**Count One should Be Dismissed Because the Only Predicate Acts Alleged To Be Within the Limitations Period Are Not Part of the Hobos Enterprise, Are Outside of the Alleged Pattern of Racketeering Acts, And Not Part of the Charged Agreement.**

A review of several cases discloses that even enterprises alleged to be comprised of a "group of individuals associated in fact" require a hierarchy of leaders with certain rules guiding members or associates' relationship to the enterprise. 18 U.S.C. § 1961(4). In *United States v. Henley*, 766 F.3d 893, 906-07 (8th Cir.2014), a band of motorcyclists were indicted for racketeering conspiracy. Finding that there was a pronounced hierarchy, known local and national rules and identified rivals, the Court overruled the claim that the members were loosely organized. The Court set out the generally accepted requirements for the description of an enterprise:

> [t]he government must offer proof of (1) a common or shared purpose that animates the individuals associated with it, (2) a formal or informal organization of the participants in which they function as a unit, including some continuity of both structure and personnel, and (3) an ascertainable structure distinct from that inherent in the conduct of a pattern of racketeering activity.  *United States v. Kragness*, 830 F.2d 842, 855 (8th Cir. 1987)( citing, *United States v. Turkette*, 452 U.S. 576, 583 (1981).

The Henley Court also addressed the challenge to the existence of a pattern of racketeering activity. *United States v. Henley*, supra, 766 F.3d at 907-08. Again the Court expressed the general rule:

> Criminal acts are related if they are shown to "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *H.J. Inc. v. NW Bell Telephone Co..* 492 U.S. 229, 239-40 (1989); other citation omitted. The acts must have both "horizontal relatedness," meaning that the acts are related to one another, and "vertical relatedness," meaning that the predicate acts have a nexus to the enterprise. *United States v. Burden*, 600 F.3d 204, 216 (2nd Cir. 2010).

Additionally, the 'pattern of racketeering activity' component requires that the predicate acts be related to each other and have continuity. *Sedima,S.P.R.L. v. Imrex Co.*, 473 US 479, 496, n.14 (1985). "Predicate acts demonstrate continuity if they are either 'a closed period of repeated conduct,' or 'past conduct that by its nature projects into the future with a threat of repetition.'" *H.J. Inc. v. NW Bell Telephone Co.*, supra, 492 U.S. at 241-42. The Henley Court's review of the evidence described those features with each of the predicate acts presented at trial.

The Henley court also adopted the rational from the well known decision in *United States v. Starrett*, 55 F.3d 1525, 1543-44 (11th Cir.1995). Both Courts resorted to the *Salinas* theory of RICO liability. Cf. *Salinas v. United States*, 522 U.S. 52, 63-65 (1997). "The focus is on the agreement to participate in the enterprise through the pattern of racketeering activity, not on the agreement to commit the individual predicate acts." This test requires "evidence showing that each defendant must necessarily have known that others were also conspiring to participate in the same enterprise through a pattern of

4

racketeering activity." Id. The prosecution in Hanley provided this proof through evidence that the defendants were advised of and acknowledged the various charged predicate acts. *United States v. Henley*, 766 F.3d at 908-09.

Other racketeering conspiracy prosecutions fit easily within the above-stated framework. In *United States v. Vernace*, 811 F.3d 609, 612-14 (2nd Cir. 2016), the Court was able to trace the appellant's rise through the entire thirty-year length of the conspiracy as he rose thru the ranks of the Gambino Crime Family from soldier to head of the organization. The opinion is written with close attention to two 1981 murders which seemed to have occurred immediately after a personal insult. But the Court found that the murders fit a subsequently established pattern of violence even while acknowledging that "RICO does not apply to 'the perpetrators of "isolated" or "sporadic" criminal acts.' *United States v. Indelicato*, 865 F.2d 1370, 1383 (2nd Cir. 1989)(*en banc*)"(considering evidence of "temporal proximity, or common goals, or similarity of methods, or repetitions"); citing also, *H.J. Inc. v. NW Bell Telephone Co..* 492 U.S. 229, 240 (1989). "That is, predicate acts 'must be related to each other ("horizontal" relatedness), and they must be related to the enterprise ("vertical" relatedness).' *United States v. Minicone*, 960 F.2d 1099, 1106 (2nd Cir. 1992)." 811 F.3d at 615.

Rather than find that the two 1981 murders were isolated or the product of a personal animus, the Court found it entirely plausible that they became the springboard to Vernace's successful criminal career. In so holding, the Court rejected any comparison to a prior holding in *United States v. Bruno*, 383 F.3d 65, 74 &N. 1, 85 (2nd

Cir. 2004), that two murders involved there were "simply personal matters." *United States v. Vernace*, supra, 811 F.3d at 616-18 .

Though arising in a different context, the appellants Calabrese and Marcello who were subjects of an earlier racketeering indictment for ostensibly the same enterprise moved to dismiss the second indictment under double jeopardy principles. *United States v. Schiro*, supra, 679 F.3d at 525. At the outset, the Seventh Circuit noted that it is "a harder question" to determine whether two conspiracies encompassing different overt acts satisfy the Blockberger test by having the same elements. Id. So, even when the agreement is to perform on behalf of the same enterprise, different predicate acts can represent different though overlapping criminal objectives and constitute separate and different conspiracy charges. Id. at 525-26.

Of interest here, is the example given of an employee at a fictitious Ford Motor Company plant that surrepititiously manufactures sawed-off shotguns. *United States v. Schiro*, 679 F.3d at 526. Should that fictitious employee to move on to a higher position and add another objective to the criminal enterprise such as the concealment of income from the illicit shotgun sales, "he has joined a separate though overlapping conspiracy." If this example had contained a temporal element, it would be even easier to discern one offense from the other. Similarly, if the shotguns were produced by one set of employee-conspirators, but a different group of employees became concerned that those activities were soon to be discovered and engaged in a cover-up to conceal the extra income, the cover-up is a crime not contemplated by the employee's original agreement.

This conclusion is found in the following language appropriate to the issue raised in *Schiro*:

> But if you murder, which is Outfit business because it is too sensitive to be left to the street crews, you are working for the Outfit in a respect that is different from your street crew work; you are demonstrating that your agreement to assist the Outfit is broader than and distinct from your agreement to assist your street crew, just as conspiring to assemble shotguns at a plant is different from conspiring to conceal the assembly of shotguns at numerous plants.

*United States v. Schiro*, 679 F.3d at 527.

While the Court found that the Outfit activities representing the broader conspiracy with which Calabrese and Marcello were associated conducted ongoing predicate acts ("illegal gambling machines" and "street-tax collection") within the five-year statutory period, the same cannot be said here as to any of the named defendants who were not named as participants in the 2009 robbery or the 2013 murder, Paris Poe and Gary Chester. Cf. *United States v. Schiro*, 679 F.3d at 528. This is particularly true for those named defendants who were incarcerated prior to the temporal hiatus commencing in late 2008; by that time several defendants were incarcerated such as Gregory Chester, Stanley Vaughn, Arnold Council and Gabriel Bush. What happened to the remaining hierarchy or structure of the alleged continuing enterprise during the next six years during which the 2009 robbery and 2013 murder are committed is unstated in Count One.

A separate question, then, is whether Count One which charges a racketeering conspiracy commencing in 2004 remains a valid pleading for the two predicate acts alleged to be within the five-year statute of limitations as the applicability of the earlier agreement to participate in the common-objectives of the earlier conspiracy is the only factual basis upon which the charged RICO conspiracy is premised. The earlier

7

agreement, if one is shown to have existed, does not allege facts which lead to inclusion of the latter in time predicate acts as part of the earlier enterprise's pattern of racketeering activities. As stated in *United States v. Turkette*, 452 U.S. 576, 583 (1981), "[t]he enterprise . . . is an entity separate and apart from the pattern of activity in which it engages," and requires separate proof other than unrelated criminal conduct. Accord, *United States v. Rogers*, 89 F.3d 1326, 1336 (7th Cir. 1996). This legal principle was reaffirmed in *Boyle v. United States*, 556 U.S. 938, 947 (2009). Without the structural features along with the existence of an agreement defining common goals, any individual member could make liable another member for an act of violence which is purely personal and, by definition, is unrelated to the RICO conspiracy. For instance in *United States v. Tello*, 687 F.3d 785, 793-95 (7th Cir. 2012), the Court found that the predicate acts to which the appellant plead were linked to the activities of the Latin Kings enterprise through which he had agreed to participate.

    As recognized above, the existence of a "pattern of racketeering" requirement can become an invitation to the prosecution to introduce any unlawful conduct performed by a cooperating individual or witness or defendant under the guise that the misconduct furthered one of the broadly worded means by which the enterprise carried out its illegal activities. For instance the murder of Terrence Anderson for which Gabriel Bush entered a negotiated plea to murder in the second degree is a listed racketeering act; nowhere in the Count One, however, does the grand jury describe how the Anderson murder or the other alleged related murders further the conspiratorial goals of the enterprise. Count three charges the Anderson murder as a violation of 18 U.S.C. §§ 1959(a)(1) and (2), on

September 1, 2007, by Bush "for the purpose of maintaining and increasing position in the HOBOS Enterprise." It begs the question as to where the commission of this alleged murder propelled Gabriel Bush as, unlike in the case of the defendant Vernace, there is little structure or hierarchy to be found within Count One.

## CONCLUSION

The failure to demonstrate the continuous operation of the early drug conspiracy after incarceration of its core membership by late 2008, even if one accepts that its members were not above protecting their drug lines through violence, is fatal to Count One which must be dismissed. There are no allegations contained therein to bridge the five-year gap between the 2008 activities and, for example, the 2013 murder. The fact that Count One sounds in conspiracy law which under RICO precedents is very broad in that there is no need to link a defendant to a predicate offense, there remains the requirement of an agreement which shows knowledge and acquiescence to the alleged racketeering activity, and none is alleged in Count One to incorporate and bridge the five year period of inactivity. Even the broadest application of these RICO conspiracy principles, found in *Salinas v. United States*, 522 U.S. 52, 63-65 (1997), is unavailing here. Whatever can be said of the breadth of the reach of a RICO conspiracy, even it must end, and without an intricate structure to hold its membership together, probably sooner rather than later. The fallacy, then, of the racketeering conspiracy presented in Count One is that it fails to tie the allegations of predicate acts to the identified enterprise and the alleged common objectives to which its members had to have agreed to work toward to bring it within the applicable limitations period.

9

WHEREFORE, for the above and foregoing reasons, the defendants, Gregory Chester, Arnold Council, Gabriel Bush, Paris Poe, Stanley Vaughn, William Ford and Derrick Vaughn respectfully move to dismiss Count One of the Superseding Indictment.

Respectfully submitted,

/S/ Steven Shobat
Steven Shobat
53 W. Jackson Blvd,. Suite 1603
Chicago, IL  60604

Attorneys for Gabriel Bush

/S/ Carl P. Clavelli
Carl P. Clavelli
53 W. Jackson Blvd., Suite 733
Chicago, IL  60604
(312) 263-0505

CERTIFICATE OF SERVICE

I hereby certify that on March 10, 2016, I filed and served the foregoing Joint Motion To Dismiss Count One On Limitations Grounds on opposing counsel using the Court's CM/ECF electronic filing system.

S/ *Carl P. Clavelli*
Carl P. Clavelli