IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>GREGORY CHESTER, *et al.*, )<br>(PARIS POE) )<br>)<br>Defendant. ) | No. 13 CR 774-3<br>Judge John J. Tharp |

**DEFENDANT POE'S MOTION TO SUPPRESS POST-ARREST STATEMENTS
RELATED TO THE ARMED ROBBERY AND ATTEMPT MURDER OF VICTIM 1**

Defendant, **PARIS POE**, by his attorneys, **PATRICK W. BLEGEN** and **PAUL M. BRAYMAN**, pursuant to the Due Process and Self-Incrimination clauses of the Fifth Amendment to the Constitution of the United States, the principles enunciated by the Supreme Court in *Miranda v. Arizona*, 384 U.S. 436 (1966), *Edwards v. Arizona*, 451 U.S. 477 (1981), and their progeny, respectfully moves this Court for an order suppressing as evidence in this, and any other, criminal proceeding, certain statements purportedly made by Defendant Poe in July 2006 and on May 13, 2009.

In support of this motion, Defendant, through counsel, shows to the Court the following:

1. Defendant is charged in three counts of a ten-count superseding indictment with racketeering conspiracy, in violation of 18 U.S.C. § 1962(d) (Count One); murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(1) (Count Two); and, obstruction of justice through murder, in violation of 18 U.S.C. § 1503(a) & (b)(1) (Count Six). If convicted, Defendant faces a potential punishment of life in prison.

2. Two of the racketeering acts specified in Count One are the attempted murder and armed robbery of Victim 1 allegedly committed by Arnold Council and Paris Poe on or about June 11, 2006. (Dkt. 169, ¶¶8(s)(i) &(u)(i)).

3. Mr. Poe was arrested by members of the Chicago Police Department in connection with this offense in July 2006.[1] While in custody, he was questioned by law enforcement officers regarding the June 11, 2006, robbery, and allegedly gave a statement.[2] At no time during his arrest or detention was Mr. Poe advised of his *Miranda* rights.

4. Mr. Poe was eventually released without charges. Nearly three years later, on May 13, 2009, Mr. Poe was re-arrested by CPD pursuant to an investigative alert issued in connection with another offense.[3]

5. As part of the discovery tendered to counsel, the government has provided a report detailing Mr. Poe's arrest, his detention at Area 2 Detective Division, and the subsequent statements he made to law enforcement officers. Copies of the Chicago Police Department Supplemental Reports regarding these incidents are available for the Court's review if requested.

6. According to reports, after Mr. Poe was arrested, "R/Det met with Poe and instructed him that his presence was necessary for a line-up regarding a home invasion incident."

---

[1] Reports tendered during discovery indicate that Mr. Poe was arrested after Victim 1 tentatively identified him from a photo array prepared by CPD detectives on June 12, 2006. (CPD_061106-000017). It does not appear that the government has produced this photo array to defense counsel. Defense counsel reserve the right to file additional pretrial motions based on this photo array if and when it is produced.

[2] It does not appear that the government has produced a report memorializing the events of Mr. Poe's July 2006 arrest and detention in connection with the robbery of Victim 1. Thus, counsel is unaware of the date of the arrest and the substance of Mr. Poe's statement. However, an arrest *did* take place, because the government has produced photographs of the lineup which occurred on the same day as Mr. Poe's arrest. (Mr. Poe was not identified in the lineup). A photograph identifies the date of the lineup as "July 06." The exact date, however, is cut off. Additionally, the 2009 report (discussed *infra*, pp. 3-4) quotes Mr. Poe as stating "he already told police what happened [the night Victim 1 was robbed] because he was taken to the Police station." (Bates CPD_061106-000026-27.). Defense counsel reserve the right to supplement this motion or file additional pretrial motions based on this report if and when it is produced.

[3] This other offense is the home invasion robbery listed as a racketeering act in the superseding indictment. According to reports, CPD Detective A. Kennedy, #20205, investigated both the home invasion robbery and this armed robbery.

2

Reports indicate that Mr. Poe immediately became aggressive and argumentative, shouting "Nobody saw me do anything!, Call my lawyer!? [sic]".

7. Law enforcement later contacted Mr. Poe's attorney by telephone, who allegedly stated that his presence was not necessary at Area 2 and that Mr. Poe "knows what to do." While Mr. Poe was allegedly present with law enforcement during this telephone call, there is nothing in the report to suggest he was given the chance to consult with his attorney during the conversation.

8. At some time point afterwards, officers questioned Mr. Poe about "what happen[ed] the night that [Victim 1] was robbed." (*See* CPD_061106-000026). Mr. Poe made a brief statement in response. (*See* CPD_061106-000027).

9. Mr. Poe believes that the government will attempt to introduce both his July 2006 and May 13, 2009, statements into evidence at trial in this matter. Each statement should be excluded from evidence for the following reasons.

### *CPD Officers Failed to Advise Mr. Poe of His Miranda Rights in June 2006*

10. In order to protect an individual's Fifth Amendment right against self-incrimination, the Supreme Court has held that an individual in custody must be advised of certain rights before law enforcement can begin a custodial interrogation. *Miranda v. Arizona*, 384 U.S. 436 (1966). Law enforcement agents are required to advise an arrested individual that he or she: (1) has the right to remain silent; (2) has a right to an attorney, and that an attorney will be provided if the suspect cannot afford to hire privately retained counsel; and, (3) that any statement that he or she does make may be used as evidence in a criminal proceeding against the suspect. *Miranda*, 384 U.S. at 444-45. Any statements made during a custodial interrogation

where an individual has not been provided *Miranda* warnings are inadmissible.[4] *Miranda* at 444. The Supreme Court has also explained that "the term 'interrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980).

11. Because Mr. Poe made statements during the custodial interrogation in July 2006, but was not first advised of his *Miranda* rights, his statements should be suppressed.

### *Mr. Poe Unambiguously Requested Counsel and Never Initiated Contact with Law Enforcement on May 13, 2009*

12. It is black letter law that once the right to counsel is invoked, all interrogation must immediately cease until an attorney is present. *James v. Arizona*, 469 US. 990, 992 (1984). The cessation of questioning must be scrupulously honored unless and until the accused: (1) initiates further discussion related to the investigation; and, (2) makes a knowing and intelligent waiver of the right to counsel. *Id*.

13. In *Edwards v. Arizona*, 451 U.S. 477 (1981), the Supreme Court held that:

> When an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right of counsel cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights. We further hold that an accused [ ] having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police.

---

[4] While Congress attempted to overrule *Miranda* through the enactment of 18 U.S.C. §3501 and its voluntariness analysis, the Supreme Court concluded in *United States v. Dickerson*, 530 U.S. 428 (2000) "that *Miranda* announced a constitutional rule that Congress may not supersede legislatively." *Id*. at 436, 440. Thus, statements made by an individual in custody without the benefit of *Miranda* warnings remain inadmissible, despite the language of §3501. *See*, *Dickerson*, 530 U.S. at 440, 444.

4

*Id*. at 484-85.

14. At no time after his demand that police "call [his] lawyer" did Mr. Poe initiate contact with law enforcement. Rather, law enforcement kept Mr. Poe under its thumb throughout the encounter. And while police allegedly contacted Mr. Poe's attorney, they never gave Mr. Poe an opportunity to consult with him or speak with him privately. Instead, they simply began their interrogation. As the Supreme Court has held, it is inconsistent with *Miranda* and its progeny for law enforcement to interrogate an accused who has clearly asserted his right to counsel—exactly what took place here. *Edwards*, 451 U.S. at 485.

15. Moreover, the fact that Mr. Poe asserted his right to counsel after being arrested in connection with a home invasion, rather than the June 11, 2006, armed robbery, does not mean that law enforcement was free to question him about the robbery. Rather, the rule established in *Edwards* is "non-offense specific and prohibits police from interrogating a suspect regarding *any* offense after the suspect invokes his *Miranda* rights. *United States v. Martin*, 664. F.3d 684, 688 (7th Cir. 2011), *citing McNeil v. Wisconsin*, 501 U.S. 171, 177 (1991).

16. In order to be effective, the defendant's invocation of the right to counsel must be unambiguous. *Davis v. United States*, 512 U.S. 452, 459 (1994). The suspect must "articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." *Id*.

17. The Seventh Circuit has addressed the issue of whether a statement regarding counsel is to be considered an unambiguous request on a number of occasions. *See*, *e.g., United States v. Shabaz*, 579 F.3d 815, 819 (7th Cir. 2009); *United States v. Peters*, 435 F.3d 746, 752 (7th Cir. 2006); *United States v. Lee*, 413 F.3d 622 (7th Cir. 2005); *Lord v. Duckworth*, 29 F.3d 1216, 1219 (7th Cir. 1994).

18. In two of its most recent decisions regarding whether a request for counsel is unambiguous, *Shabaz* and *Lee*, the Seventh Circuit has referred to a group of statements which it believes represents unambiguous requests for counsel. *See*, *Shabaz*, 579 F.3d at 819; *Lee*, 413 F.3d at 626. Both *Shabaz* and *Lee* discuss the Seventh Circuit's 1994 decision in *Lord* and provide guidance regarding what sorts of statements will be considered unambiguous requests for counsel:

> In the *Lord* decision, however, this court mentioned several requests for counsel that it considered unequivocal: "I think I should call my lawyer?"; "I have to get a good lawyer, man. Can I make a phone call?"; "Can I talk to a lawyer? At this point, I think maybe you're looking at me as a suspect, and I should talk to a lawyer. Are you looking at me as a suspect?" *See Lord*, 29 F.3d at 1221 (quoting cases from Eleventh and Ninth Circuits regarding unambiguous invocation of the right to counsel). Lee's statement—"Can I have a lawyer?"—was similar to these statements recognized by this court as proper invocations of this right to an attorney.

*Lee*, 413 F.3d at 626.

19. The distinction between unambiguous statements described in *Lord* such as "I think I should call my lawyer," and ambiguous statements such as the one evaluated in *Shabaz*, "am I going to be able to get an attorney?" is that the latter does not clearly imply a present desire to consult with counsel. *Shabaz*, 579 F.3d at 819. Moreover, statements described as unambiguous in *Lord* are not merely indications of a potential desire to consult with counsel; they are statements reflecting an actual desire to consult with counsel. *Lee*, 413 F.3d at 626.

20. In the case before the Court, Mr. Poe's statement to law enforcement—"Call my attorney!"—clearly expressed a present desire to consult with counsel. Indeed, if the question, "I think I should call my lawyer?" *Lord*, 29 F.3d at 1221, qualifies as an unambiguous statement, then Mr. Poe's demand that police "[c]all [his] attorney!" certainly qualifies as such.

6

*Conclusion*

21.     In light of the above, the defense requests that the Court suppress as evidence in this or any other matter any and all statements made by Mr. Poe on during his arrest and detention in July 2006, and on May 13, 2009.

22.     Should the Court determine that matters outside of the record are necessary to resolve this motion, the defense requests an evidentiary hearing.

WHEREFORE, Defendant respectfully requests that the Court enter its order suppressing as evidence in this or any other criminal proceeding certain statements, described above, purportedly made by Defendant Poe in July 2006 and on May 13, 2009.

                                                        Respectfully submitted,

                                                         **s/ Patrick W. Blegen**
                                                        **PATRICK W. BLEGEN**, One of the
                                                        Attorneys for Defendant Paris Poe.

**BLEGEN & GARVEY**
53 West Jackson Boulevard, Suite 1437
Chicago, Illinois 60604
(312) 957-0100