IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 13 CR 774-3 |
| ) | Judge John J. Tharp |
| GREGORY CHESTER, *et al.*, ) | |
| (PARIS POE) ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT POE'S MOTION TO SUPPRESS POST-ARREST STATEMENT**

Defendant, **PARIS POE**, by his attorneys, **PATRICK W. BLEGEN** and **PAUL M. BRAYMAN**, pursuant to the Due Process and Self-Incrimination clauses of the Fifth Amendment to the Constitution of the United States, the principles enunciated by the Supreme Court in *Miranda v. Arizona*, 384 U.S. 436 (1966), *Edwards v. Arizona*, 451 U.S. 477 (1981) and their progeny, respectfully moves this Court for an order suppressing as evidence in this, and any other, criminal proceeding, certain statements purportedly made by Defendant Poe on November 18, 2008.

In support of this motion, Defendant, through counsel, shows to the Court the following:

1. Defendant is charged in three counts of a ten-count superseding indictment with racketeering conspiracy, in violation of 18 U.S.C. § 1962(d) (Count One); murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(1) (Count Two); and, obstruction of justice through murder, in violation of 18 U.S.C. § 1503(a) & (b)(1) (Count Six). If convicted, Defendant faces a potential punishment of life in prison.

2. As part of the discovery tendered to counsel, the government has provided a video/audio recording of a post-arrest statement made by Mr. Poe to a Sergeant with the Chicago

Police Department on November 18, 2008.[1] The interrogation appears to have been conducted in a holding room at CPD's Area One Detective Division, and according to the video time-stamp, begins at approximately 10:40 a.m.

3. Shortly after taping begins, a man who identifies himself as an Area One Detective reads *Miranda* warnings to Mr. Poe and asks if he would like to speak with him about the murder of Wilbert Moore. Mr. Poe clearly answers, "No, I want to talk to my attorney." The detective then leaves the room.

4. Mr. Poe is alone in the room until approximately 11:10 a.m., when a man who later identifies himself as "Sergeant Wall" enters the room.

5. Sgt. Wall proceeds to interview Mr. Poe about a variety of matters, including unsolved offenses, Mr. Poe's alleged associates, and the reason Mr. Poe was then in custody. This interview lasted approximately one hour.

6. Once the right to counsel is invoked, all interrogation must immediately cease until an attorney is present. *James v. Arizona*, 469 US. 990, 992 (1984). The cessation of questioning must be scrupulously honored unless and until the accused: (1) initiates further discussion related to the investigation; and, (2) makes a knowing and intelligent waiver of the right to counsel. *Id*.

7. In *Edwards v. Arizona*, 451 U.S. 477 (1981), the Supreme Court held that:

> When an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right of counsel cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights. We further hold that an accused [ ] having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by authorities until counsel has been made available to him, unless the accused

---

[1] Counsel can provide a copy of this recording to the Court if requested.

> himself initiates further communication, exchanges, or conversations with the police.

*Id*. at 484.

8.  The rule established in *Edwards* is "non-offense specific and prohibits police from interrogating a suspect regarding *any* offense after the suspect invokes his *Miranda* right to counsel. *United States v. Martin*, 664. F.3d 684, 688 (7th Cir. 2011), *citing McNeil v. Wisconsin*, 501 U.S. 171, 177 (1991).

9.  The defendant's invocation of the right to counsel must be unambiguous. *Davis v. United States*, 512 U.S. 452, 459 (1994). The suspect must "articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." *Id*.

10. The Seventh Circuit has addressed the issue of whether a statement regarding counsel is to be considered an unambiguous request on a number of occasions. *See*, *e.g., United States v. Shabaz*, 579 F.3d 815, 819 (7th Cir. 2009); *United States v. Peters*, 435 F.3d 746, 752 (7th Cir. 2006); *United States v. Lee*, 413 F.3d 622 (7th Cir. 2005); *Lord v. Duckworth*, 29 F.3d 1216, 1219 (7th Cir. 1994).

11. In two of its most recent decisions regarding whether a request for counsel is unambiguous, *Shabaz* and *Lee*, the Seventh Circuit has referred to a group of statements which it believes represents unambiguous requests for counsel. *See*, *Shabaz*, 579 F.3d at 819; *Lee*, 413 F.3d at 626. Both *Shabaz* and *Lee* discuss the Seventh Circuit's 1994 decision in *Lord* and provide guidance regarding what sorts of statements will be considered unambiguous requests for counsel:

> In the *Lord* decision, however, this court mentioned several requests for counsel that it considered unequivocal: "I think I should call my lawyer?"; "I have to get a good lawyer, man. Can I

3

> make a phone call?"; "Can I talk to a lawyer? At this point, I think maybe you're looking at me as a suspect, and I should talk to a lawyer. Are you looking at me as a suspect?" *See Lord*, 29 F.3d at 1221 (quoting cases from Eleventh and Ninth Circuits regarding unambiguous invocation of the right to counsel). Lee's statement—"Can I have a lawyer?"—was similar to these statements recognized by this court as proper invocations of this right to an attorney.

*Lee*, 413 F.3d at 626.

12. The distinction between unambiguous statements described in *Lord* such as "I think I should call my lawyer," and ambiguous statements such as the one evaluated in Shabaz, "am I going to be able to get an attorney?" is that the latter does not clearly imply a present desire to consult with counsel. *Shabaz*, 579 F.3d at 819. Moreover, statements described as unambiguous in *Lord* are not merely indications of a potential desire to consult with counsel; they are statements reflecting an actual desire to consult with counsel. *Lee*, 413 F.3d at 626.

13. In the situation before the Court, Mr. Poe's statement to law enforcement—"I want to talk to my attorney"—is as unambiguous as it gets. Mr. Poe plainly expressed a present desire to consult with counsel. His statement is at least consistent with, and possibly clearer than, those deemed unambiguous by the Seventh Circuit.

14. Moreover Mr. Poe never reinitiates discussions. A new detective simply enters the room and begins questioning Mr. Poe. Mr. Poe's *Miranda* warnings were never re-asserted to him, and he never made a waiver of his rights.

15. In light of the above, and to the extent the government even believes such an after-invocation statement is admissible, the defense requests that the Court suppress as evidence in this or any other matter any and all statements made by Mr. Poe on November 18, 2008.

16. Should the Court determine that matters outside of the statements captured on tape are necessary to resolve this motion, the defense requests an evidentiary hearing.

WHEREFORE, Defendant respectfully requests that the Court enter its order suppressing as evidence in this or any other criminal proceeding certain statements purportedly made by Defendant Poe on November 18, 2008, subsequent to the invocation of his right to counsel.

Respectfully submitted,

 s/ Patrick W. Blegen
**PATRICK W. BLEGEN**, One of the
Attorneys for Defendant Paris Poe.

**BLEGEN & GARVEY**
53 West Jackson Boulevard, Suite 1437
Chicago, Illinois 60604
(312) 957-0100